## Christian G. Ryerson, Appellant, v. Luther M. Fairbanks et al., Appellees.

APPEALS AND ERRORS—*when findings of chancellor not disturbed.* Findings of fact by a chancellor will not be disturbed on review as against the weight of the evidence unless clearly and manifestly so.

Bill in equity. Appeal from the Circuit Court of Piatt county; the Hon. W. G. COCHRAN, Judge, presiding. Heard in this court at the May term, 1911. Affirmed. Opinion filed October 9, 1911. *Certiorari* denied by Supreme Court (making opinion final).

HERRICK & HERRICK and SCHNEIDER & SCHNEIDER, for appellant.

LE FORGEE, VAIL & MILLER and CARL S. REED, for appellees.

MR. JUSTICE FROST delivered the opinion of the court.

This is a suit in equity brought in the Piatt County Circuit Court by appellant, Christian G. Ryerson, against Luther M. Fairbanks and the First National Bank of Mansfield, to cancel the assignment of thirty-five shares of stock of said bank executed by Ryerson to Fairbanks, and also to cancel a certain note for $3,500 given by Ryerson to Fairbanks. Appellee, the

First National Bank of Mansfield, was organized in 1902, with a capital stock of $25,000. · W. D. Fairbanks, brother of appellee, Luther M. Fairbanks, was its president, and James C. Langley, a son in law of appellant, was its cashier.    In October, 1905, Langley was discovered to be short in his accounts with the bank to the extent, as claimed by appellees, of nearly $70,000.   Luther M. Fairbanks, who had no interest in the bank, afterwards came to its rescue with sufficient funds to meet the defalcation of Langley.   Langley and his father turned over to the Fairbanks property to the extent of $36,000.    On October 28, 1905, C. F. Mansfield, an attorney for Luther M. Fairbanks, went to the home of Ryerson, who resided about seven miles from Gibson City on a farm.   Ryerson owned thirty-five shares of the bank stock.   Mansfield took with him John Darst.   At Gibson they requested A. L. Phillips, an attorney who was slightly acquainted with Ryerson, to go with them to see Ryerson, as neither Mansfield nor Darst was acquainted with Ryerson.   Phillips introduced Mansfield and Darst to Ryerson, and as claimed by appellees, Mansfield made known to Ryerson Langley's defalcation, and the intention of Luther M. Fairbanks to save the bank if those who could would help; that he, Mansfield, wanted Ryerson to help to the extent of $3,500, and turn over to Luther M. Fairbanks the thirty-five shares, and Fairbanks would guarantee to release Ryerson from all liability on account of his stock.   Ryerson stated he did not have the money.   Mansfield replied to appellant that if he would give his note for $3,500 due in one year, and assign his certificates of stock to L. M. Fairbanks, he would submit the matter to Fairbanks, and if Fairbanks did not give his consent to return the note and certificates.   To this appellant finally agreed, and note and assignments were made and delivered to Mansfield, who then prepared a receipt and agreement in

duplicate, which he signed for Fairbanks as his attorney, as follows: ·

"Mansfield, Illinois, October 28, 1905.

Received from C. G. Ryerson one promissory note for thirty-five hundred dollars ($3,500.00) payable to L. M. Fairbanks or order dated October 28th, 1905, due October 28th, 1906, bearing five per cent interest per annum. The said C. G. Ryerson being a stockholder in the First National Bank of Mansfield, Illinois, the delivery of said note and the transfer of thirty-five shares of stock held by him of the capital stock of said bank shall relieve the said Ryerson from all and every liability on account of his being a stockholder in said bank and the deficiency therein caused by the defalcation of James C. Langley, Cashier of said bank, and I, L. M. Fairbanks by C. F. Mansfield, my attorney, guarantee in consideration of said note and its payment and the surrender and transfer of said stock to save said C. G. Ryerson from any further loss or liability on account of his being a stockholder as aforesaid.
      L. M. Fairbanks,
      By C. F. Mansfield, his attorney."

Appellant claims that the consideration of the note and assignment of stock was that Langley was not to be prosecuted for his defalcations; that the note and stock were obtained by fraud and duress, and void; that Mansfield, as attorney for the bank, and Darst as one of its directors, stood in fiduciary relations to appellant, and were thereby bound not to misrepresent anything. The cause was referred to the master, who reported adversely to the contentions of appellant, and found that no fraud had been practiced on appellant in procuring the note and the transfer of the stock, and that no threats of a criminal prosecution of Langley were made at the time, and that appellant was not entitled to the relief prayed for. The Circuit Court sustained the master's finding.

The proof of the allegations of fraud and duress and threats of criminal prosecution rested entirely upon the evidence of appellant, who was seventy-eight years of age at the time he testified, and of his daughter, aged thirty-three. In this they are met by the testimony of Darst, Mansfield and Phillips, who deny that any threats were made, or any fraudulent statements made by them to appellant. From their testimony it appears that the situation was fully developed and explained to appellant, and no statement was made by them to cause Ryerson to believe that Langley was not to be prosecuted, if he, Ryerson, complied with their request. Appellant, in his testimony, referring to the above agreement, says that he read some of it, and that Mansfield read it aloud, and after Phillips, Mansfield and Darst went away, some of the girls read it all, and that he thought he understood everything in it. With a full understanding of the transaction as set forth in the agreement, he afterwards, on November 2, went to Gibson City, and received the satisfaction signed by Luther M. Fairbanks, and receipted for a copy. We think the evidence shows that Ryerson was not misled by any statements or actions or conduct of those acting on behalf of Luther M. Fairbanks.

Was appellant defrauded in the transaction? From the testimony of Luther M. Fairbanks, it appears that Langley's shortage was between seventy-two and seventy-three thousand dollars, and that the Fairbanks furnished about $68,000 to meet this shortage. From a statement of the bank's condition in August, 1905, produced by appellant, the capital stock, surplus and undivided profits amounted to $30,458.22, including in this the value of the banking house, etc., which was placed at $7,363.05. With a shortage of $72,000, it is quite evident that the capital stock was wiped out, and that each stockholder was liable for the full amount of his stock. No statement was made to the appellant

according to his own testimony concerning the bank's condition or his liability on account of his stock, or the value of his stock by appellees that was not true, and so on the ground of fraud, there can be no question but that the finding of the master and the decree of the court were right.

Upon the question of duress, we would not be warranted in disturbing the decree, unless it is against the weight of the evidence, which we do not find to be the case. Upon the contrary, we think the finding in this regard is fully sustained by the testimony of appellees' witnesses, and the inferences to be drawn from the actions and conduct of appellant. Admitting all the conclusions to be drawn from appellant's testimony and that of his daughter, most favorably in his behalf, we do not think they establish legal duress.

Fnding no error in the decree, the same will be affirmed.

*Affirmed.*